May Term,
1847.                              EWING and Another *v.* COOMBS.

EWING
v.          Assumpsit brought by an administrator on a written contract, by which the
COOMBS.          defendant sold to the intestate one-half of a claim on some Indians, with a
              guarantee, &c.; each of the parties was to assist, in the collection of the
              claim, at the next Indian treaty; and a certain void obligation, held by the
              intestate on the defendant, was to be given up.  On the trial under the gene-
              ral issue the contract was proved, but there was no evidence that the intestate
              had assisted in the collection of said claim, or that said void obligation had
              been given up.  *Held,* that the plaintiff could not recover.
          The first count (in said suit), which alleged that the void obligation had been
              given up; that the intestate died before the contemplated treaty was made;
              and that the claim, on account of its date, was inadmissible under the treaty;
              was held to be bad.
          The third count alleged, that, in consideration that the intestate had bought
              of the defendant the half of a certain other claim, &c., "at and for a certain
              other sum and price agreed upon" between the parties, the defendant pro-
              mised, &c.  *Held,* that this count, by omitting to state what the sum or price
              was which the parties had agreed upon for the half of the claim, showed no
              consideration for the defendant's promise.

Tuesday,        APPEAL from the *Allen* Circuit Court.
May 25.         BLACKFORD, J.—This was an action of assumpsit brought
           by *Coombs,* administrator of *Godfroy,* against *W. G.* and *G.
           W. Ewing.*
              The first count states that the defendants and the intestate
           made the following agreement in writing:  *W. G.* and *G.
           W. Ewing* hereby sell to *James G. Godfroy* the undivided
           half of a certain claim they have against *A.* and *C. Revoir,*
           on which they (*Ewings*) have paid 300 dollars, which is to
           be presented at the next investigation of *Miami* Indian
           claims under the next treaty when made with them; all the
           damages and profits recovered therein are to be equally
           divided between said *Ewings* and *Godfroy,* each one-half;
           and said *Ewings* and *Godfroy* are each to assist in the col-
           lection thereof; said *Ewings* guaranty that *Godfroy* shall
           receive certain thereon 150 dollars; *Godfroy* holds *Ewings'*
           obligation to said *Revoirs* for 500 dollars assigned to him,
           bearing date the 16th of *December,* 1833, given in part pay-
           ment for a section of land, the title to which said *Revoirs*
           have failed to make good, and said note is null and void, and
           is to be given up to said *Ewings* in twenty days from the
           date hereof.  *Fort Wayne, Nov.* 16, 1839.
              This count avers, that *Godfroy* afterwards gave up to the

defendants the obligation which he held against them as aforesaid; that said *Revoirs* are *Miami* Indians; that after *Godfroy's* death, viz., in 1840, the *United States* made a treaty with the *Miami* Indians (which was the next and only treaty made with said Indians after the date of said agreement); that an investigation of claims against said Indians, under said treaty, was had in 1841; that said claim against said *Revoirs* was an account for goods sold in 1833; that under the treaty, no claims which had accrued prior to 1838 could be allowed; that the defendants retained said claim in their hands; that although the plaintiff was always ready to assist in the collection of said claim, the defendants refused to attempt to collect the same; that said *Revoirs* are insolvent; and that the claim is, and has been ever since the date of said agreement, of no value whatever. By means whereof the defendants became liable, &c.

The third count states, that, in consideration that *Godfroy* had bought of the defendants the half of a certain other claim against said *Revoirs*, &c., "at and for a certain other sum and price agreed upon" between the parties, the defendants promised *Godfroy* that the claim was good, and that he should receive certain as his half thereof 100 dollars. It was then averred that the claim was not valid, and that nothing had been received on it.

The fifth count is for money had and received by the defendants for the use of the intestate.

The second and fourth counts were adjudged bad on demurrer, and need be no further noticed.

To the first, third, and fifth counts the general issue was pleaded; the cause was submitted to the Court, and judgment rendered for the plaintiff.

On the trial, the plaintiff introduced the written agreement described in the first count. He also called a witness who stated, that, at the investigation of Indian claims under the treaty of 1840, he heard some conversation between the plaintiff and one of the defendants about the claim aforesaid, but did not recollect what it was; that the claim was not presented at that investigation; that one of the *Revoirs* was insolvent and the other solvent; and that he (the witness

May Term, 1847.

EWING
v.
COOMBS.

May Term, 1847.

EWING
v.
COOMBS.

who was Indian agent) told the defendants he should resist the claim. There was no other evidence.

It is very clear that none of the counts pleaded to was proved. The agreement relied on in the first count shows that the consideration for the claim sold to *Godfroy* was, that he would assist the defendants in its collection, and that he would give up the obligation which he held against them. There was no evidence at all that *Godfroy* performed either of those acts. The third count states that *Godfroy* bought the claim for a certain sum and price agreed upon between the parties. The only agreement proved was that described in the first count; and, as we have just remarked, there was no proof of *Godfroy's* performance of the precedent condition. There does not appear to have been any attempt whatever to prove the count for money had and received.

It may be proper to remark further, that we do not think that any cause of action is shown by either the first or third counts. According to the first count, *Godfroy* died before the treaty noticed in the agreement was made; and, of course, one of the considerations of the defendants' promise, viz., that *Godfroy* would assist in collecting the claim under that treaty, could not be performed. The averment that the claim, on account of its date, was inadmissible under the treaty, does not help the plaintiff. The agreement depended for its validity upon the subsequent making of a treaty under which the merits of the claim might be investigated. If no such treaty was made, the agreement is not binding on the parties. The other consideration of the defendants' promise, viz., the giving up of the defendants' obligation, was of no value, as the agreement signed by *Godfroy* expressly says that that obligation was null and void. The third count, by omitting to state what the sum or price was which the parties had agreed upon for the half of the claim, shows no consideration for the promise relied on in that count. The count is just as defective as it would have been, had there been no notice taken in it about any consideration.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*R. Brackenridge*, for the appellants.

*W. H. Coombs*, for the appellee.